

SEALED

2014 APR 24  PM 2:32

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO. 8:14-Cr- 164 23 EAJ

v.

DAVID BROCK LOVELACE,
TERRI L. SCHNEIDER,
GREGORY J. SYLVESTRI,
LEONARD AUSTIN,
  a/k/a Leonard G. Nemyrowski and
ILLYA C. JACKSON

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957
18 U.S.C. § 982 (forfeiture)

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times relevant to this Indictment:

**A.    The Medicare Program**

1.    The Medicare Program ("Medicare") was a federal "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that provided medical benefits, items and services (collectively "services") to persons age 65 and older or with certain disabilities (hereinafter "beneficiaries").

2.    Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items and services, including radiology, audiology,

neurology, and cardiology services, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

      3.    In Florida, Medicare Part B's insurance concerning radiology, audiology, neurology, and cardiology services, and related health care benefits, items, and services was administered by First Coast Service Options, Inc. (hereinafter "First Coast"), pursuant to a contract with the United States Department of Health and Human Services.   Among First Coast's responsibilities, it received, adjudicated, and paid the claims of authorized providers seeking reimbursement for the cost of radiology, audiology, neurology, and cardiology services, and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

**B.**    <u>**Medicare Billing Procedures**</u>

      4.    A provider that sought to participate in Medicare Part B and bill Medicare for the cost of radiology, audiology, neurology, and cardiology services, and related benefits, items, and services was required to apply for and receive a provider number.  The provider number allowed a provider to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of radiology, audiology, neurology, and cardiology services and related health care benefits, items, and services that a provider had rendered to beneficiaries.

      5.    To receive payment from Medicare, a provider, using its provider number, would submit a health insurance claim form, known as a CMS-1500. Medicare permitted providers, or a designated third-party biller, to submit a CMS-

1500 electronically or by way of a paper claim form. The CMS-1500 required providers to provide certain important information, including: (a) the Medicare beneficiary's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

6.      Medicare, through First Coast, generally would pay a substantial portion of the cost of the radiology, audiology, neurology, or cardiology services, or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

7.      Payments under Medicare Part B were often made directly to the provider rather than to the patient/beneficiary.  For this to occur, the beneficiary would assign the right of payment to the health care provider.  Once such an assignment took place, the provider would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

8.      If the provider's Medicare claim was approved, a substantial portion of the total amount of the claim was paid either by check or by wire transfer to an account designated by the provider.

3

9.     Under Medicare rules and regulations, radiology, audiology, neurology, and cardiology services, or related health care benefits, items, or other services must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare.

C.     **Entities and Individuals**

     1.     **Cornerstone Health Specialists**

10.    Cornerstone Health Specialists ("Cornerstone Health") was a business entity with a principal place of business at 5426 Strickland Avenue, Lakeland, Florida.

11.    Defendant TERRI L. SCHNEIDER was an audiologist licensed in Florida who did business as Cornerstone Health Specialists.

12.    TERRI L. SCHNEIDER caused a Medicare Enrollment Application for Cornerstone Health dated June 1, 2010 to be submitted to Medicare in which she identified herself as the owner of Cornerstone Health.

13.    TERRI L. SCHNEIDER established and, with Defendant DAVID BROCK LOVELACE, maintained signature authority on a business bank account for Cornerstone Health with Fifth/Third Bank, account number ending 6558.

     2.     **Summit Health Specialists**

14.    Summit Health Specialists, P.L. ("Summit Health") was a Florida professional limited liability company established on or about August 25, 2011.

Summit Health had a principal place of business at 15511 N. Florida Avenue, Suite B3, Tampa, Florida and at 1737 Shore View Drive, Indialantic, Florida.

15.     DAVID BROCK LOVELACE was the manager of Summit Health.

16.     DAVID BROCK LOVELACE caused a Medicare Enrollment Application for Summit Health dated November 12, 2012 to be submitted to Medicare in which he added 15511 N. Florida Avenue, Suite B3, Tampa, Florida as a principal place of business for Summit Health and in which he identified a United States Post Office Box that he controls as the address to which Medicare was to send any special payments for Summit Health.

17.     DAVID BROCK LOVELACE established and maintained signature authority on a business bank account for Summit Health with SunTrust Bank, account number ending 1695

### 3.     Coastal Health Specialists

18.     Coastal Health Specialists, LLC ("Coastal Health") was a Florida limited liability company established on or about July 26, 2013.  Coastal Health had a principal place of business at 5424 Strickland Avenue, Lakeland, Florida, and at 2210 Front Street, Suite 104B, Melbourne, Florida.

19.     TERRI L. SCHNEIDER established Coastal Health Specialists and was its managing member and registered agent.

20.     TERRI L. SCHNEIDER caused a Medicare Enrollment Application for Coastal Health dated January 17, 2013 to be submitted to Medicare in which she identified herself as the owner of Coastal Health.

21.    TERRI L. SCHNEIDER established and maintained signature authority on a business bank account for Coastal Health with Community Southern Bank, account number ending 6103.

**4.    DBL Management**

22.    DBL Management, LLC ("DBL Management") was a Florida limited liability company established on or about August 11, 2011. DBL Management had a principal place of business at 4841 Artesian Road, Land O' Lakes, Florida.

23.    DAVID BROCK LOVELACE was DBL Management's managing member.

24.    DAVID BROCK LOVELACE established and maintained signature authority on a business bank account for DBL Management with SunTrust Bank, account number ending 1687.

**5.    BioScan**

25.    BONB LLC a/k/a BioScan ("BioScan") was a Florida limited liability company established on or about December 23, 2011. BioScan had a principal place of business at 7243 Pine Manor Drive, Lake Worth, Florida.

26.    Defendant GREGORY J. SYLVESTRI and Defendant LEONARD AUSTIN a/k/a Leonard G. Nemyrowski were BioScan's managing members.

27.    GREGORY J. SYLVESTRI and LEONARD AUSTIN established and maintained signature authority on a business bank account for BioScan with Wells Fargo Bank, account number ending 5054.

6.    **Illya Enterprises**

28.    Illya Enterprises LLC ("Illya Enterprises") was a Florida limited liability company established on or about December 30, 2010. Illya Enterprises had a principal place of business at 10204 Meadow Crossing Drive, Tampa, Florida.

29.    Defendant ILLYA C. JACKSON established Illya Enterprises and was its managing member and registered agent.

**COUNT 1**
**(Conspiracy To Commit Health Care Fraud)**
**(18 U.S.C. § 1349)**

1.    Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    Beginning in or around June 2010 and continuing through in or around April 2014, in the Middle District of Florida, and elsewhere, the defendants,

DAVID BROCK LOVELACE and
TERRI L. SCHNEIDER,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute and attempt to execute a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code,

7

Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare.

### Purpose of the Conspiracy

3.      It was a purpose and object of the conspiracy for the Defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the Defendants and their co-coconspirators.

### Manner and Means

The manner and means by which the Defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.      DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would establish and control clinics, including Cornerstone Health, Summit Health, and Coastal Health, that purported to provide radiology, audiology, neurology, and cardiology services;

5.      DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would submit Medicare Enrollment Applications, Electronic Funds Transfer Agreements, and other documents and forms to Medicare identifying

8

.

themselves as owners, officers, managers, and/or administrators of Cornerstone Health, Summit Health, and Coastal Health for purposes of participating in Medicare and submitting false and fraudulent Medicare reimbursement claims;

6.     DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would submit and cause the submission of false and fraudulent Medicare reimbursement claims for services not rendered by Cornerstone Health, Summit Health, and Coastal Health;

7.     DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would misappropriate and unlawfully use unique identifying information of physicians and Medicare beneficiaries, including deceased Medicare beneficiaries, in the submission of false and fraudulent Medicare reimbursement claims;

8.     DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would establish and control bank accounts for Cornerstone Health, Summit Health, and Coastal Health into which Medicare would deposit reimbursements based on the false and fraudulent claims, which reimbursements would then be transferred and disbursed; and

9.     DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of, said conspiracy.

All in violation of Title 18, United States Code, Section 1349.

9

## COUNTS 2 through 11
## (Health Care Fraud)
## (18 U.S.C. § 1347)
## (Cornerstone Health)

1.      Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around June 2010 and continuing through in or around April 2014, in the Middle District of Florida, and elsewhere, the defendants,

### DAVID BROCK LOVELACE and
### TERRI L. SCHNEIDER,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendants, through Cornerstone Health, caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of radiology, audiology, neurology, and cardiology services.

### Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for Defendants DAVID BROCK LOVELACE and TERRI L. SCHNEIDER to unlawfully enrich themselves

10

and others by, among other things (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others.

## Manner and Means of the Scheme and Artifice

The manner and means by which Defendants DAVID BROCK LOVELACE and TERRI L. SCHNEIDER sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4.     TERRI L. SCHNEIDER identified herself as the owner of Cornerstone Health in Cornerstone Health's enrollment application submitted to Medicare.

5.     DAVID BROCK LOVELACE and TERRI L. SCHNEIDER maintained signature authority on Cornerstone Health's bank account with Fifth/Third Bank, account number ending 6558.

6.     DAVID BROCK LOVELACE and TERRI L. SCHNEIDER caused Cornerstone Health to submit approximately $5,894,954 in Medicare claims for reimbursement, such claims falsely and fraudulently representing that radiology, audiology, neurology, and cardiology services had been provided to Medicare beneficiaries.

7.     As a result of such false and fraudulent claims, DAVID BROCK LOVELACE and TERRI L. SCHNEIDER caused Medicare to make payments to Cornerstone Health in the approximate amount of $1,125,617 and to be

deposited into Cornerstone Health's bank account, Fifth/Third Bank account number ending 6558.

8.    DAVID   BROCK   LOVELACE   and   TERRI   L.   SCHNEIDER transferred and disbursed, and caused the transfer and disbursement of, monies in Cornerstone Health's bank account to themselves and others.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

9.    On or about the dates set forth as to each count below, in the Middle District of Florida, and elsewhere, DAVID BROCK LOVELACE and TERRI L. SCHNEIDER, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in that they submitted and caused the submission of false and fraudulent Medicare claims seeking reimbursement for the cost of radiology, audiology, neurology, and cardiology services that were not prescribed by doctors or provided to Medicare beneficiaries as claimed:

| Count | Medicare Beneficiary | Medicare Claim Number | Purported Date of Service | Procedure Code; Service Claimed; Approximate Amount Claimed |
|---|---|---|---|---|
| 2 | M.B. | 590911356051810 | Apr. 4, 2011 | 95903; Nerve Conduction Studies; $1,200 |
| 3 | M.B. | 590911356052370 | Apr. 5, 2011 | 93925; Vascular Ultrasound; $400 |
| 4 | M.B. | 591111124302800 | Apr. 5, 2011 | 93306; Echocardiography; $525 |
| 5 | A.W. | 591812101623580 | Mar. 27, 2012 | 95904; Nerve Conduction Studies; $1,000 |
| 6 | A.W. | 591812101643030 | Mar. 27, 2012 | 93970; Vascular Ultrasound; $545 |
| 7 | M.P. | 591012194115340 | Jun. 29, 2012 | 95904; Nerve Conduction Studies; $800 |
| 8 | A.A. | 591012237411170 | Aug. 17, 2012 | 93923; Non-Invasive Physiological Study; $290 |
| 9 | R.A. | 591012258231740 | Sep. 6, 2012 | 93925; Vascular Ultrasound; $400 |
| 10 | A.V. | 591013322919030 | Dec. 12, 2012 | 92540; Basic Vestibular Evaluation; $190 |

| Count | Medicare Beneficiary | Medicare Claim Number | Purported Date of Service | Procedure Code; Service Claimed; Approximate Amount Claimed |
|-------|---------------------|----------------------|--------------------------|-------------------------------------------------------------|
| 11 | A.M. | 591113331597550 | Jun. 24, 2013 | 92540; Basic Vestibular Evaluation; $190 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNTS 12 through 21
### (Health Care Fraud)
### (18 U.S.C. § 1347)
### (Summit Health)

1.    Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    Beginning in or around August 2011 and continuing through in or around April 2014, in the Middle District of Florida, and elsewhere, the defendant,

DAVID BROCK LOVELACE,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendant, through Summit Health, caused the

14

submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of radiology, neurology, and cardiology services.

## Purpose of the Scheme and Artifice

3.      It was a purpose of the scheme and artifice for Defendant DAVID BROCK LOVELACE to unlawfully enrich himself and others by, among other things (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of himself and others.

## Manner and Means of the Scheme and Artifice

The manner and means by which Defendant DAVID BROCK LOVELACE sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4.      DAVID BROCK LOVELACE obtained and maintained control of Summit Health by identifying himself as the manager of Summit Health in Summit Health's Electronic Funds Transfer Agreement form submitted to Medicare and by establishing and maintaining signature authority on Summit Health's bank account with SunTrust, account number ending 1695.

5.      DAVID BROCK LOVELACE caused Summit Health to submit approximately $4,329,078 in Medicare claims for reimbursement, such claims falsely and fraudulently representing that radiology, neurology, and cardiology

services were prescribed by a doctor and had been provided to Medicare beneficiaries.

6.      As a result of such false and fraudulent claims, DAVID BROCK LOVELACE caused Medicare to make payments to Summit Health in the approximate amount of $1,164,922 and to be deposited into Summit Health's bank account, SunTrust Bank account number ending 1695.

7.      DAVID BROCK LOVELACE transferred and disbursed, and caused the transfer and disbursement of monies in Summit Health's bank account to himself and others.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

8.      On or about the dates set forth as to each count below, in the Middle District of Florida, and elsewhere, DAVID BROCK LOVELACE, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in that he submitted and caused the submission of false and fraudulent Medicare claims seeking reimbursement for the cost of radiology, neurology, and cardiology services that were not prescribed by doctors or provided to Medicare beneficiaries as claimed:

| Count | Medicare Beneficiary | Medicare Claim Number | Purported Date of Service | Procedure Code; Service Claimed; Approximate Amount Claimed |
|---|---|---|---|---|
| 12 | B.P. | 591013065419950 | Nov. 19, 2012 | 95904; Nerve Conduction Studies; $800 |
| 13 | R.H. | 591113050550580 | Nov. 28, 2012 | 95905; Nerve Conduction Studies; $1000 |
| 14 | M.M. | 591013123373970 | Nov. 30, 2012 | 95904; Nerve Conduction Studies; $1,000 |
| 15 | N.V. | 591013190268600 | Jan. 17, 2013 | 95911; Nerve Conduction Studies; $500 |
| 16 | N.P. | 591113109547440 | Jan. 31, 2013 | 93925; Vascular Ultrasound; $400 |
| 17 | A.C. | 591013109769170 | Feb. 4, 2013 | 93306; Echocardiography; $525 |
| 18 | G.R. | 591113161051930 | Feb. 4, 2013 | 93306; Echocardiography; $525 |
| 19 | M.C. | 591813119533620 | Mar. 14, 2013 | 93970; Vascular Ultrasound; $545 |
| 20 | A.A. | 591013212868410 | Jul. 22, 2013 | 93925; Vascular Ultrasound; $400 |
| 21 | D.S. | 591013212868490 | Jul. 22, 2013 | 93925; Vascular Ultrasound; $400 |

In violation of Title 18, United States Code, Sections 1347 and 2.

**COUNTS 22 through 31**
**(Health Care Fraud)**
**(18 U.S.C. § 1347)**
**(Coastal Health)**

1.      Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around January 2013 and continuing through in or around April 2014, in the Middle District of Florida, and elsewhere, the defendant,

TERRI L. SCHNEIDER,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendant, through Coastal Health, caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of radiology, audiology, neurology, and cardiology services.

**Purpose of the Scheme and Artifice**

3.      It was a purpose of the scheme and artifice for Defendant TERRI L. SCHNEIDER to unlawfully enrich herself and others by, among other things (a) submitting and causing the submission of false and fraudulent claims to

18

Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of herself and others.

<u>**Manner and Means of the Scheme and Artifice**</u>

The manner and means by which Defendant TERRI L. SCHNEIDER sought to accomplish the purpose of the scheme and artifice included, among others, the following:

4.    TERRI L. SCHNEIDER established and controlled Coastal Health by identifying herself as the managing member of Coastal Health in documents filed with the State of Florida Division of Corporations, by identifying herself as the owner of Coastal Health in Coastal Health's enrollment application submitted to Medicare, and by establishing and maintaining signature authority on Coastal Health's bank account with Community Southern Bank, account number ending 6103.

5.    TERRI L. SCHNEIDER caused Coastal Health to submit approximately $2,127,014 in Medicare claims for reimbursement, such claims falsely and fraudulently representing that radiology, audiology, neurology, and cardiology services had been provided to Medicare beneficiaries.

6.    As a result of such false and fraudulent claims, TERRI L. SCHNEIDER caused Medicare to make payments to Coastal Health in the approximate amount of $557,883 and to be deposited into Coastal Health's bank account, Community Southern Bank account number ending 6103.

7.    TERRI L. SCHNEIDER transferred and disbursed, and caused the transfer and disbursement of monies in Coastal Health's bank account to herself and others.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

8.    On or about the dates set forth as to each count below, in the Middle District of Florida, and elsewhere, TERRI L. SCHNEIDER, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in that she submitted and caused the submission of false and fraudulent Medicare claims seeking reimbursement for the cost of radiology, audiology, neurology, and cardiology services that were not prescribed by doctors or provided to Medicare beneficiaries as claimed:

| Count | Medicare Beneficiary | Medicare Claim Number | Purported Date of Service | Procedure Code; Service Claimed; Approximate Amount Claimed |
|---|---|---|---|---|
| 22 | A.A. | 591013282764970 | Jul. 22, 2013 | 92540; Basic Vestibular Evaluation; $190 |

| Count | Medicare Beneficiary | Medicare Claim Number | Purported Date of Service | Procedure Code; Service Claimed; Approximate Amount Claimed |
|---|---|---|---|---|
| 23 | L.L. | 591013263617880 | Aug. 2, 2013 | 92540; Basic Vestibular Evaluation; $190 |
| 24 | B.P. | 591113280383150 | Aug. 20, 2013 | 92540; Basic Vestibular Evaluation; $190 |
| 25 | A.M. | 591013354602100 | Sep. 18, 2013 | 93975; Vascular Ultrasound; $600 |
| 26 | R.V. | 591013298679740 | Oct. 4, 2013 | 93975; Vascular Ultrasound; $600 |
| 27 | R.E. | 590913346035100 | Oct. 17, 2013 | 93975; Vascular Ultrasound; $600 |
| 28 | A.G. | 590913346035010 | Oct. 17, 2013 | 93975; Vascular Ultrasound; $600 |
| 29 | A.G. | 591113330401320 | Oct. 17, 2013 | 92540; Basic Vestibular Evaluation; $190 |
| 30 | T.P. | 591113345165840 | Oct. 21, 2013 | 93975; Vascular Ultrasound; $600 |
| 31 | H.M. | 591014037489500 | Jan. 15, 2014 | 93975; Vascular Ultrasound; $600 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 32
### (Conspiracy To Commit Money Laundering)
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around June 2010 and continuing through in or around April 2014, in the Middle District of Florida, and elsewhere, the defendants,

DAVID BROCK LOVELACE,
TERRI L. SCHNEIDER,
GREGORY J. SYLVESTRI,
LEONARD AUSTIN,
a/k/a Leonard G. Nemyrowski, and
ILLYA C. JACKSON,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, that is,

a.      to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of

the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347.

### Manner and Means

3.      DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would obtain and maintain control of Cornerstone Health, Summit Health, and Coastal Health and cause the submission to Medicare of false and fraudulent claims for reimbursement for health care benefits, items, and services.

4.      DAVID BROCK LOVELACE, TERRI L. SCHNEIDER, and their co-conspirators would establish and maintain control of bank accounts for Cornerstone Health, Summit Health, and Coastal Health into which Medicare would deposit reimbursements based on false and fraudulent claims, which reimbursements would then be transferred and disbursed to themselves and their co-conspirators.

5.     DAVID   BROCK   LOVELACE,   GREGORY   J.   SYLVESTRI, LEONARD AUSTIN, ILLYA C. JACKSON, and their co-conspirators would establish and control shell corporations, including DBL Management, BioScan, and Illya Enterprises, and bank accounts for shell corporations, that would be used to conceal the fraud and the fraud proceeds.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 33-43**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.     Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

DAVID BROCK LOVELACE and
GREGORY J. SYLVESTRI,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity:

24

| Count | Defendant | On or About Date | Financial Transaction |
|---|---|---|---|
| 33 | DAVID BROCK LOVELACE | Jun. 16, 2012 | The withdrawal of approximately $85,066.00 via check number 1974 payable to "BioScan" from Cornerstone Health's Fifth/Third Bank account ending 6558. |
| 34 | DAVID BROCK LOVELACE | Jul. 7, 2012 | The withdrawal of approximately $32,182.00 via check number 1995 payable to "BioScan" from Cornerstone Health's Fifth/Third Bank account ending 6558. |
| 35 | DAVID BROCK LOVELACE | Dec. 7, 2012 | The withdrawal of approximately $14,924.12 via check number 2058 payable to "BioScan" from DBL Management's SunTrust Bank account ending 1687. |
| 36 | DAVID BROCK LOVELACE | Jan. 28, 2013 | The withdrawal of approximately $10,230.06 via check number 2224 payable to "BioScan" from DBL Management's SunTrust Bank account ending 1687. |
| 37 | DAVID BROCK LOVELACE | Feb. 1, 2013 | The withdrawal of approximately $10,000.00 via check number 2041 payable to "Cash" from Cornerstone Health's Fifth/Third Bank account ending 6558. |
| 38 | DAVID BROCK LOVELACE | Mar. 8, 2013 | The withdrawal of approximately $9,630.42 via check number 2335 payable to "BioScan" from DBL Management's SunTrust Bank account ending 1687. |
| 39 | DAVID BROCK LOVELACE | Jun. 7, 2013 | The withdrawal of approximately $9,644.61 via check number 2609 payable to "BioScan" from DBL Management's SunTrust Bank account ending 1687. |

| Count | Defendant | On or About Date | Financial Transaction |
|-------|-----------|------------------|----------------------|
| 40 | GREGORY J. SYLVESTRI | Aug. 15, 2013 | The withdrawal of approximately $18,000.00 via check number 1231 payable to "DBL Management" from BioScan's WellsFargo Bank account ending 5054. |
| 41 | GREGORY J. SYLVESTRI | Aug. 29, 2013 | The withdrawal of approximately $18,000.00 via check number 1241 payable to "DBL Management" from BioScan's WellsFargo Bank account ending 5054. |
| 42 | GREGORY J. SYLVESTRI | Sep. 25, 2013 | The withdrawal of approximately $15,000.00 via check number 1271 payable to "DBL Management" from BioScan's WellsFargo Bank account ending 5054. |
| 43 | GREGORY J. SYLVESTRI | Nov. 7, 2013 | The withdrawal of approximately $45,000.00 via check number 1272 payable to "DBL Management" from BioScan's WellsFargo Bank account ending 5054. |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 44-46
## Money Laundering
## (18 U.S.C. § 1957)

1.      Paragraphs 1 through 29 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

TERRI L. SCHNEIDER and
GREGORY J. SYLVESTRI,

did knowingly engage and attempt to engage in monetary transactions affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity:

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 44 | GREGORY J. SYLVESTRI | Aug. 9, 2012 | The withdrawal of approximately $25,000.00 via check number 1069 payable to "Bergman Jewelers of North Palm Beach" from BioScan's WellsFargo Bank account ending 5054. |
| 45 | GREGORY J. SYLVESTRI | Oct. 5, 2012 | The withdrawal of approximately $12,000.00 via check number 1129 payable to "Bergman Jewelers of North Palm Beach" from BioScan's WellsFargo Bank account ending 5054. |

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 46 | TERRI L. SCHNEIDER | Jan. 9, 2014 | The withdrawal of approximately $30,000.00 via check number 1010 payable to "Cornerstone Health" from Coastal Health's Community Southern Bank account ending 6103. |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

1.      All of the allegations contained above are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349 or 1347, as alleged in Counts One through Thirty-One of this Indictment, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956 or 1957, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in such offense and any property traceable to such property.

       4.     The property to be forfeited includes, but is not limited to, the following:

          a.     A forfeiture money judgment of at least $2,848,424.

          b.     The contents of Fifth/Third Bank account number ending 6558 held in the name of Cornerstone Health;

          c.     The contents of SunTrust Bank account number ending 1695 held in the name of Summit Health;

          d.     The contents of Community Southern Bank account number ending 6103 held in the name of Coastal Health;

          e.     The contents of SunTrust Bank account number ending 1687 held in the name of DBL Management;

          f.     The contents of WellsFargo Bank account number ending 5054 held in the name of BONB LLC a/k/a BioScan;

          g.     A 2010 BMW 535i four-door sedan, Vehicle Identification Number WBANW1C54AC164317, registered to Defendant DAVID BROCK LOVELACE;

          h.     A 2010 Lincoln Navigator sport utility vehicle, Vehicle Identification Number 5LMJJ3H52AEJ00908, registered to Defendant DAVID BROCK LOVELACE;

i.  A custom-made platinum diamond engagement ring featuring one radiant cut diamond with a carat weight of 4.01 and 106 accenting diamonds, purchased by Defendant GREGORY J. SYLVESTRI for $60,208.

5.  If any of the property described above, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

FOREPERSON

A. LEE BENTLEY, III
United States Attorney

By: _____
CHRISTOPHER J. HUNTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

By: _____
ROBERT A. MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

31

FORM OBD-34
APR 1991                              No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA
vs.
DAVID BROCK LOVELACE
TERRI L. SCHNEIDER
GREGORY J. SYLVESTRI
LEONARD AUSTIN, a/k/a Leonard G. Nemyrowski and
ILLYA C. JACKSON

## INDICTMENT

Violations:    18 U.S.C. § 1349
               18 U.S.C. § 1347
               18 U.S.C. § 1956(h)
               18 U.S.C. § 1956(a)(1)(B)(i)
               18 U.S.C. § 1957

A true bill,

_____
Foreperson

Filed in open court this 24th day
of April 2014.

_____
Clerk

Bail    $_____

GPO 863 525